UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID FRYE, TRUSTEE, and<br>INDIANA LABORERS PENSION FUND,<br><br>Plaintiffs,<br><br>v.<br><br>YOUNGS EXCAVATING, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Case No. 1:13-cv-00962-TWP-DML<br>)<br>)<br>)<br>)<br>) |

## ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiffs Indiana Laborers Pension Fund (the "Fund") and David Frye, Trustee (Filing No. 25). After Defendant Youngs Excavating, Inc. notified the Laborers' Local Union (the "Union") that it was not going to renew its collective bargaining agreement with the Union, the Fund determined Youngs Excavating's withdrawal liability under the Employee Retirement Income Security Act ("ERISA") and notified Youngs Excavating of that liability and presented a payment plan. Youngs Excavating did not raise a dispute as to its liability and did not initiate mandatory arbitration. Instead, it made two quarterly payments to the Fund and then stopped payment. The Fund initiated this action on June 14, 2013, to collect the unpaid withdrawal liability of Youngs Excavating. The Fund filed its summary judgment motion asserting that there are no disputed facts and it is entitled to judgment as a matter of law. For the following reasons, the Court **GRANTS** the Fund's Motion for Summary Judgment.

### I.  BACKGROUND

The Fund is a multi-employer pension plan as defined in Section 3(37) of ERISA (29 U.S.C. § 1002(37)). The Fund's office and principal place of business is in Terre Haute, Indiana.

Youngs Excavating is an employer existing under the laws of the State of Indiana with its office and principal place of business in South Bend, Indiana (Filing No. 26 at 2–3).

Since approximately 2001, Youngs Excavating has been a signatory to a series of collective bargaining agreements with the Laborers' International Union of North America, Indiana State District Council, most recently with Local 645, for which the Fund is the pension fund. As a result of these collective bargaining agreements, Youngs Excavating was required to make contributions to the Fund. During this same time, Youngs Excavating also was a signatory to a series of collective bargaining agreements with International Union of Operating Engineers, Local 150 (Filing No. 29 at 1–2).

On March 9, 2012, Youngs Excavating sent the Union a letter, notifying the Union that it would not be renewing its collective bargaining agreement. (Filing No. 31-2). Attached to the March 9, 2012 letter was a Federal Mediation and Conciliation Service ("FMCS") F-7 Notice to Mediation Agencies. *Id.* at 2. Youngs Excavating ceased to have an obligation to contribute to the Fund, effective June 1, 2012. The Fund's actuary then computed the amount of withdrawal liability that accrued, and on June 6, 2012, the Fund gave notice of the calculation and assessment to Youngs Excavating (Filing No. 25-3). On July 5, 2012, Youngs Excavating responded to the Fund's June 6, 2012 letter and requested the worksheets from the calculation performed by the Fund's actuary in determining the amount of withdrawal liability owed by Youngs Excavating (Filing No. 31-3). The Fund promptly sent the requested information to Youngs Excavating in a letter dated July 6, 2012, and explained, "[s]hould you require additional information related to this matter, please feel free to contact me." (Filing No. 34-2.) Thereafter, in compliance with the withdrawal liability payment plan established by the Fund, Youngs Excavating made two payments of $7,332.00 each to the Fund. However, Youngs Excavating failed to make the third

payment owed or any subsequent payment called for in the payment plan, and it remains indebted to the Fund for at least $138,363.00 plus interest in the sum of $15,889.00 (Filing No. 25-1 at 2). Youngs Excavating never sent notice to the Fund that it disputed its withdrawal liability or the amount of that liability, and it never demanded or initiated ERISA mandated arbitration. *Id.* at 3.

The Fund filed its Complaint seeking a judgment in the amount of Youngs Excavating's obligation to the Fund, plus liquidated damages, interest, attorney fees, and costs (Filing No. 1). In its summary judgment motion, the Fund asserts that Youngs Excavating has waived its opportunity to dispute its withdrawal liability because it failed to demand or initiate arbitration of any dispute as required by ERISA.

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation

marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.  DISCUSSION

A.  **ERISA Background**

>  [W]hen an employer withdraws from a multiemployer pension plan governed by ERISA, the plan [must] assess a withdrawal liability against him, 29 U.S.C. § 1396, so that the financial burden of his employees' vested pension benefits will not be shifted to the other employers in the plan and, ultimately, to the Pension Benefit Guaranty Corporation, which insures such benefits. To trigger application of the statute, the pension plan must issue a notice, and a demand for payment of, withdrawal liability to the employer. § 1399(h). If the employer wants to contest the assessment he must first complain informally to the plan within 90 days. § 1399(b)(2)(A). If he obtains no satisfaction from this mandatory conciliation procedure he must initiate arbitration -- the method prescribed by the statute for resolving disputes concerning assessments of withdrawal liability -- within 60 days after the earlier of either the plan's response to the employer's initial complaint, or 120 days after the employer, as part of the conciliation procedure, requests additional information from the plan regarding the assessment. § 1401(a)(1). Should the employer fail to request arbitration within the deadline the amount of withdrawal liability assessed by the plan becomes due and owing and the plan can (as here) sue to collect it. § 1401(b)(1).

*Central States, Southeast & Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1371–72 (7th Cir. 1992).

B.  **Youngs Excavating Failed to Use the Informal Conciliation Process and Arbitration**

To assert a defense to withdrawal liability, under 29 U.S.C. § 1399(b)(2)(A), an employer first should (1) ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments, (2) identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, or (3)

4

furnish any additional relevant information to the plan sponsor no later than 90 days after the employer receives notice from the plan sponsor.

Here, Youngs Excavating claims that it met this requirement by its July 5, 2012 letter to the Fund requesting, "worksheets from the calculation performed by the Fund's actuary in determining the amount of the [withdrawal liability]" owed by Youngs Excavating (Filing No. 31-3). However, a request for documents is not considered a request for review or an identification of inaccuracy pursuant to 29 U.S.C. § 1399(b)(2)(A). Indeed, in its July 5, 2012 letter, Youngs Excavating did not request the Fund to review any specific matter relating to the determination of withdrawal liability, identify any inaccuracy in the determination of the amount of withdrawal liability, or furnish any additional relevant information to the Fund regarding the determination of withdrawal liability. As a result, Youngs Excavating did not utilize the informal conciliation process established in ERISA.

Furthermore, Youngs Excavating failed to initiate or demand arbitration of the issue of withdrawal liability as required by ERISA, 29 U.S.C. § 1401(a)(1). This arbitration demand is required to later assert a defense to withdrawal liability. Under Section 4221(a)(1) of ERISA, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under section 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Additionally, "either party may initiate the arbitration proceeding within a 60-day period after the earlier of (a) the date of notification to the employer under section 1399(b)(2)(B) of this title, or (b) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title." *Id*. "If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amount demanded by the plan sponsors under section

5

1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. 1399(b)(1).

Youngs Excavating disputes the Fund's assertion that it never initiated arbitration as required by ERISA. It claims that it did initiate arbitration when it notified the Union it would not renew the collective bargaining agreement by letter dated March 9, 2012. This argument misses the mark. There was no dispute to arbitrate between the Fund and Youngs Excavating until after the Fund determined the amount of Youngs Excavating's withdrawal liability and provided notice of that liability amount and payment plan to Youngs Excavating. Thereafter, if Youngs Excavating disagreed with its withdrawal liability or the payment plan presented by the Fund, it could initiate the mandatory arbitration for such a dispute. There was no request to initiate arbitration in Youngs Excavating's March 9, 2012 letter wherein Youngs Excavating simply notified the Union it would not be renewing the collective bargaining agreement. Additionally, notice of non-renewal of the collective bargaining agreement to the Union was not notice to the Fund. *See Pipe Fitters' Welfare Fund, Local Union 597 v. Mosbeck Industrial Equipment, Inc.*, 856 F.2d 837, 843 (7th Cir. 1988) (trust and its trustees are not representatives of the Union).

Youngs Excavating also points to the FMCS Form F-7 that it sent to the Union as an attachment to its March 9, 2012 letter. It asserts that this form meets the arbitration requirement under ERISA. However, the purpose of the FMCS Form F-7 is to provide notice to the Federal Mediation and Conciliation Service when a party seeks to either modify or terminate an existing collective bargaining agreement pursuant to Section 8(d)(3) of the National Labor Relations Act (29 U.S.C. § 158(d)(3)). 29 C.F.R. §1402.1. Therefore, the FMCS Form F-7 merely notifies the Federal Mediation and Conciliation Service of potential mediation; it does not initiate mediation, and it does not initiate arbitration pursuant to 29 U.S.C. § 1401(a)(1). In fact, the second page of

the FMCS Form F-7 explicitly informs the filing party that "this form does not constitute a request for mediation." (Filing No. 34-3 at 2.)

### C. Consequences for Failing to Initiate Arbitration

As explained above, if an employer wants to contest the assessment of withdrawal liability, the first step is to informally complain to the plan within 90 days. If the employer is not satisfied at this step, it must then initiate arbitration within 60 days after the earlier of either the plan's response to the employer's initial complaint or 120 days after the employer requests additional information from the plan regarding the assessment. *Slotky*, 956 F.2d at 1371–72; *see also* 29 U.S.C. § 1401(a)(1). Should the employer fail to request arbitration within the statutory timeframe, the amount of withdrawal liability assessed by the plan becomes due and owing. *Slotky*, 956 F.2d at 1372.

Youngs Excavating claims that it did not completely withdraw under the special withdrawal provision applicable to the construction industry, pursuant to 29 U.S.C. § 1383(b)(2)[1], because it no longer performs covered work within the jurisdiction of the Laborers Union. Youngs Excavating argues that based on this construction industry exception, it did not fully withdraw, so withdrawal liability cannot be imposed.

However, even if taken as true, Youngs Excavating missed its opportunity to present this defense. When an employer fails to arbitrate pursuant to Section 4221, it forfeits its opportunity to contest both the existence of the withdrawal liability and the amount due. *Combs v. Adkins & Adkins Coal Co.*, 597 F. Supp. 122, 126–27 (D.D.C. 1984). This is true even in instances when the construction industry exception of Section 4203(b)(2) applies. *See Bd. of Trustees, Sheet Metal*

---

[1] 29 U.S.C. § 1383(b)(2) states that under the building and construction industry exception a complete withdrawal occurs if the employer "(1) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or (2) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption."

7

*Workers' Nat. Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 854, 874 (E.D. Mich. 2010) (ruling the applicability of the building and construction industry exception is an issue subject to ERISA's mandatory arbitration requirement and will be waived if arbitration does not take place). The opportunity to assert that withdrawal did not occur is in arbitration and within the statutory time limit of 29 U.S.C. § 1401(a)(1). It was Congress's intent that disputes over withdrawal liability be resolved quickly, which is why the deadline is short and arbitration is the forum for resolving the dispute. *Slotky*, 956 F.2d at 1376. Since Youngs Excavating failed to arbitrate this issue within the statutory time limit, it cannot bring this defense now. "If no arbitration proceeding has been initiated . . . , the amounts demanded by the plan sponsor . . . shall be due and owing." 29 U.S.C. § 1401(b)(1).

"In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." 29 U.S.C. § 1451(b). ERISA provisions provide parties seeking recovery for delinquent contributions (and, as in this case, unpaid withdrawal liability) specific recovery:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. §1132(g)(2).

The Fund designated evidence, showing that Youngs Excavating's withdrawal liability obligation is $138,363.00, plus $15,889.00 in interest (Filing No. 25-1 at 2). Not only did Youngs Excavating fail to designate any evidence to dispute this amount, but it also failed to even argue that such an amount is inaccurate. Therefore, the Court finds that Youngs Excavating's withdrawal liability obligation is $138,363.00, plus $15,889.00 in interest.

## IV. CONCLUSION

For the foregoing reasons, the Fund's Motion for Summary Judgment (Filing No. 25) is **GRANTED**. Youngs Excavating, Inc. is liable to the Fund for its unpaid withdrawal liability in the amount of $138,363.00, plus $15,889.00 in interest. Pursuant to 29 U.S.C. §1132(g)(2), the Fund also is entitled to its reasonable attorney fees, costs of this action, and an amount equal to the greater of (1) interest on the unpaid contributions, or (2) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of $138,363.00. If these other fees and costs are sought, the Fund must file an accounting of this additional award within **thirty (30) days** of the date of this Order. Final judgment will issue at a later date.

**SO ORDERED.**

Date: 9/30/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Frederick W. Dennerline, III
FILLENWARTH DENNERLINE GROTH & TOWE LLP
fdennerline@fdgtlaborlaw.com

Arthur Charles Johnson, II
JOHNSON RUPPA & IVANCEVICH LLC
acj@jsilaw.com